1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   HAMPTON L. FINNEY,                          1:09-cv-01657-AWI-DLB (HC)

10                          Petitioner,         FINDINGS AND RECOMMENDATION
                                                REGARDING PETITION FOR WRIT OF
11          v.                                  HABEAS CORPUS

12                                              [Doc. 1]
     J.D. HARTLEY,
13
                            Respondent.
14   _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                                      BACKGROUND

19          Petitioner is currently in the custody of the California Department of Corrections and

20   Rehabilitation following his 1987 conviction of first degree murder, assault with a deadly

21   weapon, and use of a handgun.  Petitioner is serving a sentence of twenty-five years to life for

     first degree murder plus six years for the assault and handgun convictions.
22
23          In the instant petition, Petitioner does not challenge the validity of the conviction; rather,

24   he challenges the Board of Parole Hearings' (Board) September 2006 decision.

25          Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior

26   Court challenging the Board's 2006 decision.  The superior court found there was some evidence

27   to support the Board's decision.  Petitioner then filed petitions in the California Court of Appeal

28   and California Supreme Court.  Both petitions were summarily denied.

1

1      Petitioner filed the instant federal petition for writ of habeas corpus on April 21, 2008.

2  Respondent filed an answer to the petition on June 22, 2010, and Petitioner filed a traverse on

3  August 13, 2010.

4                                  STATEMENT OF FACTS

5      On December 5, 1981, Petitioner and his two crime partners armed with weapons

6  approached the Arastoozad family residence planning to commit a home invasion robbery. At

7  approximately 12:00 p.m., Petitioner and his partner went to the Arastoozad residence and rang

8  the doorbell.  The victim's mother, Parvin Arastoozad, opened the door and the two indicated

9  they wished to deliver a Christmas tree to the residence.  Parvin, having no knowledge of a tree

10  being delivered, told the two to return later that evening to deliver the tree.

11      Catherine Neman, a friend of the Arastoozad family, arrived at the home with Ned

12  Arastoozad and Doron Zarabi.  Ms. Neman noticed an unfamiliar orange van in the driveway.

13  They saw crime partner, James Ree, holding a black automatic weapon, standing by the side of

14  the house.  Petitioner approached the driver's side of the car, pointed his gun at the passengers in

15  the vehicle, and instructed them to leave.  After everyone exited the vehicle, Petitioner appeared

16  and was observed holding an automatic weapon.  He ordered everyone towards the front door

17  and demanded a key to the house.  When Petitioner and the occupants of the car got to the front

18  door, the victim's mother was standing at the door and began yelling.  The mother was pushed to

19  the floor.  Once inside, James Ree's son, Tim Ree, appeared.

20      Jahngir Arastoozad, the victim's father, was in the family home with the victim upstairs

21  writing letters to family in Iran.  He heard his wife scream and saw the victim, Shahram

22  Arastoozad, run from the bedroom down the hallway to the front of the house.  The victim's

23  father heard a gunshot, and he saw Petitioner with a gun pointed at the victim.  He saw the victim

24  bleeding on the floor and attempted to render aid to him.  After doctors removed a bullet from

25  the victim's head, he was pronounced dead that evening at 10:25 p.m.  Petitioner was arrested

26  three years later.

27  ///

28  ///

                                          2

DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71;Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal

3

law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
A federal habeas court making the "unreasonable application" inquiry should ask whether the
state court's application of clearly established federal law was "objectively unreasonable." Id. at
409.

Petitioner has the burden of establishing that the decision of the state court is contrary to
or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.    Review of Petition

There is no independent right to parole under the United States Constitution; rather, the
right exists and is created by the substantive state law which defines the parole scheme.  Hayward
v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,
482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing
Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.
Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive
nature of the parole-release decision, state statutes may create liberty interests in parole release
that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S.
at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is
suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for
> release on parole. Regardless of the length of time served, a life prisoner shall be found
> unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
> unreasonable risk of danger to society if released from prison.

> (b) Information Considered. All relevant, reliable information available to the
> panel shall be considered in determining suitability for parole. Such information shall
> include the circumstances of the prisoner's social history; past and present mental state;
> past criminal history, including involvement in other criminal misconduct which is
> reliably documented; the base and other commitment offenses, including behavior before,
> during and after the crime; past and present attitude toward the crime; any conditions of

4

treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re

Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the

circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances
> of the commitment offense as a basis for a decision denying parole, the aggravated
> nature of the crime does not in and of itself provide some evidence of current
> dangerousness to the public unless the record also establishes that something in
> the prisoner's pre- or post-incarceration history, or his or her current demeanor
> and mental state, indicates that the implications regarding the prisoner's
> dangerousness that derive from his or her commission of the commitment offense
> remain probative to the statutory determination of a continuing threat to public
> safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors

related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

the determination that a prisoner remains a danger to the public.  It is not the existence or

nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

significant circumstance is how those factors interrelate to support a conclusion of current

dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

central issue of *current* dangerousness when considered in light of the full record before the

Board or the Governor.'"  Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing

Hayward v. Marshall, 603 F.3d at 560).

A.     Last Reasoned State Court Decision

The Los Angeles County Superior Court issued the last reasoned decision stating in

pertinent part:

> Petitioner was received in the Department of Corrections on November 10,
> 1987 after a conviction for first-degree murder with a firearm and assault with a
> deadly weapon.  He was sentenced to thirty-one years to life.  His minimum
> parole eligibility date was September 23, 2004.  The record reflects that on
> December 5, 1981, petitioner, and two crime partners went to the victim's home
> attempting to burglarize it.  Before they entered, a vehicle carrying three family
> friends arrived.  Petitioner's crime partner ordered them out of the car at gunpoint.
> Petitioner, armed with an automatic weapon, pushed everyone into the house where
> they encountered the victim's mother.  She was pushed to the floor.  The victim
> and his father were upstairs when they heard screams.  The victim's father heard a
> gunshot and saw that his son was lying on the floor bleeding. The victim died in
> the hospital of a gunshot wound to the head.  Petitioner was arrested three years

later.

The Board found petitioner unsuitable for parole after a parole consideration hearing held on September 13, 2006. Petitioner was denied parole for one year. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and threat to public safety. The Board based its decision on his commitment offense.

The Court finds that there is some evidence to support the Board's finding that "the motive for the crime is inexplicable or very trivial in relation to the offense." (Cal. Code Reg. Tit. 15, § 2402, subd. (c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more trivial) than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2004) 119 Cal.App.4th 871, at 893.) Petitioner killed the victim during a robbery. The "motivation to obtain money" is materially more trivial than those which conventionally drive people to murder" (*In re Honesto* (2005) 130 Cal.App.4th 81, 95.); therefore, there is some evidence that petitioner poses a risk of danger to society if released from prison.

The record further reflects that multiple victim were attacked, injured, or killed in the same incident. (Cal. Code Regs., Tit. 15, § 2402, subd. (c)(1)(A).) Although only one victim was killed during the robbery, several others were attacked when they were threatened at gunpoint and pushed into the residence. The victim's mother was injured when she was hit in the head by the petitioner's weapon and knocked to the ground. Petitioner also pointed his gun at the victim's father when he came down the stairs. The fact that several victims were involved in this crime is some evidence that petitioner committed the offense in an especially heinous, atrocious, and cruel manner.

B.    2006 Board Hearing

At Petitioner's second parole consideration hearing on September 13, 2006, the Board found Petitioner unsuitable for release based on the circumstances of the commitment offense.

After considering all of the relevant factors, the Board concluded that the extremely cruel, cold, and callous manner in which the commitment offense occurred, rendered Petitioner an unreasonable risk to public safety if released. Multiple victims were attacked, injured and killed. Petitioner and his crime partners were all armed with weapons. The victim was shot at close range in the head after he approached Petitioner. Both the victim's mother and father saw their son be shot by Petitioner and left to die. The victim's mother was pushed to the ground and the victim's father was threatened at gunpoint by Petitioner.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682

1   (2002).  However, in cases where prisoners have served their suggested base terms and have

2   demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness,

3   the underlying circumstances of the commitment offense alone rarely will provide a valid basis

4   for denying parole.  In re Lawrence, 44 Cal.4th 1191, 1211 (2008).  In this case, at the time of

5   Petitioner's *second* parole hearing in 2006, he had only served 19 years on his 31 years to life

6   term.  The Board commended Petitioner for his positive programming; however, given

7   Petitioner's minimal period of incarceration, it was certainly reasonable for the Board and

8   appellate court to find that he must continue his gains over an extended period of time before it

9   can be said that he no longer remains an unreasonable risk to public safety if released.  Thus, the

10  superior court's determination that there was "some evidence" to support the Board's conclusion

11  that Petitioner remains an unreasonable risk to public safety based on the fact that the

12  commitment offense was especially heinous as multiple victims were attacked, injured, or killed,

13  was not unreasonable.  28 U.S.C. § 2254.

14                                      RECOMMENDATION

15          Based on the foregoing, it is HEREBY RECOMMENDED that:

16          1.      The instant petition for writ of habeas corpus be DENIED; and

17          2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

18          This Findings and Recommendation is submitted to the assigned United States District

19  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

20  Local Rules of Practice for the United States District Court, Eastern District of California.

21  Within thirty (30) days after being served with a copy, any party may file written objections with

22  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

2   and filed within fourteen (14) days after service of the objections.  The Court will then review the

3   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

4   failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6

7        IT IS SO ORDERED.

8        **Dated:** __**January 3, 2011**__                    _____ **/s/ Dennis L. Beck** _____
                                                                      UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28